UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DOMINGO RAMOS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| ALAMO AREA COUNCIL OF | § | SA09CA0721 |
| GOVERNMENTS, | § | |
| Defendants. | § | JURY TRIAL DEMANDED |



## ORIGINAL COMPLAINT

Plaintiff Domingo Ramos files this suit against Defendants Alamo Area Council of Governments (AACOG) and complains that he was wrongfully terminated from his employment in violation of federal. More specifically, Plaintiff complains that Defendant AACOG terminated Plaintiff's employment in retaliation for exercising his First Amendment right in reporting allegations of fraud, misconduct, racial discrimination and mismanagement of public funds. As a result of Defendants' wrongful actions, Plaintiff suffered injuries and seeks monetary relief.

### JURISDICTION AND VENUE

1. Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. §§1331 and 1343.

2. Defendant's actions and the events giving rise to Plaintiff's claims occurred within the jurisdiction of the United States District Court for the Western District of Texas. Accordingly, pursuant to 28 U.S.C. §1391, venue is proper in this Court.

## PARTIES

3. Plaintiff Domingo Ramos is a Hispanic male who resides in Atascosa County, Texas.

4. Defendant Alamo Area Council of Governments (AACOG) is a governmental entity doing business in Bexar County, Texas.

## Facts

5. Plaintiff is a 30 year-old Latino male was employed by Defendant with AACOG from January 2007 to October 2008. Defendant initially hired Plaintiff as a counselor and then promoted him in July, 2007 to the position of Assistant Center Manager at Defendant's office in Pearsall, Texas.

6. Beginning sometime in the fall of 2007, Plaintiff began to notice misconduct in his work place. Plaintiff learned that his supervisor, Jane Hibdon, and other staff were not accurately reporting their work hours. Plaintiff reasonably believed that these individuals were getting paid even though they had not worked such hours.

7. Plaintiff also learned that grant reports, which were submitted to federal and state agencies, did not contain accurate data concerning the use and expenditures of a public grant. For example, Plaintiff reported to Ms. Hibdon that a Temporary Assistance for Needy Families (TANF) participant in the Choices Program had lied in reporting her volunteer hours to Defendant. Correcting the grant report would have jeopardized Defendant's grant monies.

8. Ms. Hibdon instructed Plaintiff to disregard the evidence that the TANF participant had lied about her volunteer hours. Plaintiff stated that he would not participate in the forgery of documents and would not sign any documents which he

knew contained false information. Ms. Hibdon told Plaintiff to "lose" the evidence of forgery. The grant report was submitted to federal and state agencies without false information.

9. Plaintiff also learned that Ms. Hibdon was engaging in racial discrimination. Plaintiff noticed that she demonstrated preferential treatment for a white employee, Scott Peterson, and that such treatment was not extended to non-whites. In addition, Plaintiff became aware that Ms. Hibdon permitted Defendant's Hondo office, which was supervised by a white employee, to close for employee lunches or special occasions, such as employee birthdays, but the same treatment was not accorded to the Pleasanton office which was supervised by a Latino.

10. Plaintiff reported such fraud, misconduct, discriminatory treatment, and mismanagement of public monies to his immediate supervisor Jane Hibdon. Ms. Hibdon told Plaintiff to ignore the misconduct and denied committing any racial discrimination. Pursuant to his job description and Defendant's policies, Plaintiff was not charged with the duty to report fraud, misconduct, racial discrimination, and/or mismanagement of public monies.

11. Because Plaintiff complained about fraud, misconduct, discriminatory treatment, and mismanagement of public monies, Ms. Hibdon began to retaliate against Plaintiff, accusing him of inappropriate conduct. Plaintiff denied any wrongdoing.

11. On or about March 2008, Plaintiff reported the allegations of fraud, misconduct and mismanagement to Frio County Judge Carlos A. Garcia who is a board member and officer of AACOG. Judge Garcia told Plaintiff he would arrange a meeting between Plaintiff and Gloria Arriaga, the Executive Director of AACOG to discuss

Plaintiff's concerns.

12. On or about June 15, 2008, Plaintiff met with Ms. Arriaga and County Judge Garcia and again reported his allegations of fraud, mismanagement, racial discrimination, and misconduct. Ms. Arriaga expressed concerns about Plaintiff's allegations and assured Plaintiff that appropriate action would be taken.

13. Shortly thereafter, Ms. Hibdon did not return to Plaintiff's office to work. Sara Valdez, an Assistant Center Manager from another office was brought in to act as Center Manager at the Pearsall office until a replacement for Ms. Hibdon was found.

14. Despite Ms. Hibdon's departure, Defendant continued to retaliate against Plaintiff.

15. On or about August 15, 2008, Plaintiff filed a formal grievance complaining of retaliation.

16. Shortly thereafter, Defendant was placed on leave for one week. Defendant advised Plaintiff that he had been accused of sexual harassment by another staff member and the allegation was under investigation. Plaintiff denied the allegation.

17. Defendant then reassigned Plaintiff to the San Antonio office and removed his Pleasanton office keys.

18. At a later date, Defendant determined that the sexual harassment allegations made against Plaintiff had no merit.

19. Defendant then learned that Plaintiff had been secretly recording conversations at work for some time to document the fraud, mismanagement and misconduct.

20. Defendant terminated Plaintiff on October 9, 2008.

### First Amendment Unlawful Retaliation

21. Incorporating the paragraphs above, Plaintiff alleges that Defendant unlawfully retaliated against Plaintiff for reporting allegations of fraud, misconduct, racial discrimination, and mismanagement of public monies. In reporting such allegations, Plaintiff spoke as a citizen on a matter of public concern.

22. Plaintiff's interest in reporting fraud, misconduct, and mismanagement of public monies outweighs any limited interest in promoting efficiency, particularly when it concerns the public fisc and Plaintiff continued to perform his duties in a professional manner.

23. Defendant was motivated in imposing adverse employment actions and terminating Plaintiff's employment because of his speech.

24. Defendant acted under color of state law in depriving Plaintiff of his right to free speech in violation—guaranteed by the First and Fourteenth Amendments—in violation of 42 U.S.C. § 1983.

25. Furthermore, Defendant acted with malice or willfulness or with deliberate, reckless, and callous indifference to Plaintiff's federally protected rights.

26. As a result of such deprivation of First Amendment rights, Plaintiff has suffered damages and seeks to recover actual and compensatory damages, including mental anguish, lost wages, court costs, and attorney's fees.

27. As a result of the conduct described above, Plaintiff seeks to recover punitive damages.

### Title VII Retaliation Claim

28. The factual allegations in the paragraphs above are hereby re-alleged and

incorporated by reference.

29. Defendant violated Plaintiff's rights by retaliating against him for complaining about racial discrimination and discharging Mr. Rivera for complaining about racial discrimination.

30. As a result of Defendant's actions, Mr. Rivera suffered, and continues to suffer, injuries and he seeks actual, compensatory and punitive damages.

### **Prayer for Relief**

WHEREFORE, Plaintiff requests that the Defendant be cited to appear and answer, and that on final trial, Plaintiff have the following:

1. Judgment against Defendant for back wages, plus interest at the legal rate from the date of Plaintiff's termination until the date of judgment;

2. Judgment against Defendant for the present value of front pay due to Plaintiff for the period following the date of the judgment, calculated as of the date of the judgment;

3. An additional amount representing compensatory damages for mental pain, anguish, inconvenience, and humiliation;

4. An award of punitive damages against Defendant in a sum determined by the trier of fact.

5. Interest, after judgment, at the legal rate until paid;

6. Costs of court;

7. Reasonable and just attorney's fees; and

8. Such other and further relief to which the Plaintiff may be justly entitled.

Respectfully Submitted,

_____
JAVIER N. MALDONADO
Texas Bar No. 00794216

Law Office of Javier N. Maldonado, PC
110 Broadway, Ste. 510
San Antonio, Texas 78205
Phone: 210-227-1603
Facsimile: 210-225-3958

Juan Gonzalez
Gonzalez & Otero, LLC
110 Broadway, Ste. 510
San Antonio, Texas 78205
Phone: 210-587-4000
Facsimile: 210-587-4001

**ATTORNEYS FOR PLAINTIFF**